IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. WASHINGTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLANT,

V.

RASHAD WASHINGTON, APPELLANT AND CROSS-APPELLEE.

Filed April 8, 2025.    Nos. A-24-233, A-24-234.

Appeals from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Michael J. Wilson, of Berry Law Firm, for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Rashad Washington appeals the order of the district court for Douglas County which dismissed his motion for postconviction relief without an evidentiary hearing on the basis that his claims did not warrant a hearing. The State cross-appeals and asserts that Washington's motion for postconviction relief was untimely filed. Upon our review, we agree with the State. Thus, we affirm the district court's dismissal of Washington's motion, as it is correct, although our decision is based on a reason different from that relied on by the district court.

### BACKGROUND

Following a 2011 jury trial, Washington was convicted and sentenced for a total of nine crimes in two separate cases. After various appellate and postconviction proceedings, Washington's convictions and sentences were ultimately affirmed by the Nebraska Supreme

Court. See *State v. Washington*, 301 Neb. 420, 918 N.W.2d 597 (2018). The Supreme Court issued its mandate on December 21, 2018. Washington filed a petition for certiorari in the U.S. Supreme Court on March 7, 2019. The U.S. Supreme Court denied his petition on October 7, 2019.

Washington subsequently moved for postconviction relief in the district court on October 6, 2020. The State moved to dismiss Washington's motion on the ground that it was time barred pursuant to Neb. Rev. Stat. § 29-3001(4) (Reissue 2016). Section 29-3001(4), as it existed at the time, stated that a 1-year limitation period applies to a motion for postconviction relief and that the 1-year period shall run from the later of:

(a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;

(b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;

(c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;

(d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review; or

(e) August 27, 2011.

In its motion to dismiss, the State argued that § 29-3001(4)(a) was the applicable triggering event in this case. The State then cited to Nebraska Supreme Court precedent which interpreted § 29-3001(4)(a) and held that the issuance of a mandate by a Nebraska appellate court is a definitive determination of the conclusion of a direct appeal. Thus, the State asserted that Washington had 1 year from December 21, 2018, the date the Supreme Court issued its mandate in Washington's direct appeal, to file a motion for postconviction relief. Having not filed until October 2020, the State concluded that Washington's motion was untimely.

The district court disagreed and denied the State's motion to dismiss. In its order, the court stated that the central issue in this case was "the meaning of the phrase 'direct appeal.'" After determining that there was no case law differentiating a direct appeal from an "appeal," the court found that a reasonable and proper construction of the phrase "direct appeal" included appeals to the U.S. Supreme Court by way of a petition for certiorari. The court stated that "[i]f the Legislature wanted [the phrase 'direct appeal'] to [refer] only to the Nebraska Supreme Court, it should have so stated."

Thereafter, Washington filed an amended motion for postconviction relief. The State responded with another motion to dismiss and once again argued that the motion was untimely. The State alternatively argued that Washington's motion alleged conclusory facts only and should be dismissed without an evidentiary hearing.

The district court ultimately sustained the State's second motion to dismiss on the basis that Washington's postconviction claims did not warrant an evidentiary hearing. Washington appeals. The State cross-appeals.

## ASSIGNMENTS OF ERROR

On appeal, Washington assigns, summarized and restated, that the district court erred in denying his motion for postconviction relief without an evidentiary hearing.

On cross-appeal, the State argues that Washington's motion for postconviction relief was untimely under § 29-3001(4)(a).

## STANDARD OF REVIEW

If the facts in a case are undisputed, the issue as to when the statute of limitations begins to run is a question of law. *Syring v. Archdiocese of Omaha*, 317 Neb. 195, 9 N.W.3d 445 (2024). Likewise, statutory interpretation presents a question of law. *Id.* An appellate court independently reviews questions of law decided by a lower court. *Id.*

## ANALYSIS

Washington generally assigns that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. The State has cross-appealed and argues that Washington's claims for postconviction relief were time barred under § 29-3001(4)(a). The State's argument must be analyzed first because, if true, it is dispositive of this appeal.

The State specifically argues that the 1-year limitation period outlined in § 29-3001(4)(a) began to run on December 21, 2018, the date the Supreme Court issued its mandate on direct appeal. Washington did not file his postconviction motion until October 6, 2020. Thus, the State concludes that his motion was untimely.

Washington disagrees that the limitation period began to run on December 21, 2018. Instead, he argues in favor of the district court's analysis and asserts that the phrase "direct appeal" as used in § 29-3001(4)(a) includes petitions for certiorari to the U.S. Supreme Court. Thus, he concludes that his motion was timely because he filed it within 1 year of the U.S. Supreme Court's denial of his petition for certiorari.

As outlined above, § 29-3001(4) provides a 1-year limitation period for postconviction relief with five different triggering events. Neither party disputes that § 29-3001(4)(a) was the only applicable subsection at the time Washington filed his postconviction motion. Section 29-3001(4)(a) states that the 1-year limitation period shall run from "[t]he date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal."

The Supreme Court has previously wrestled with the issue of when a direct appeal is considered concluded for purposes of § 29-3001(4)(a). In *State v. Huggins*, 291 Neb. 443, 866 N.W.2d 80 (2015), this court affirmed the orders of the district court on the defendant's direct appeal, and his petition for further review was denied by the Supreme Court. We subsequently issued a mandate in September 2012. The defendant did not petition the U.S. Supreme Court for a writ of certiorari.

In November 2013, the defendant moved for postconviction relief, and in response, the State argued that the 1-year limitations period had expired. On appeal, Huggins argued that the 1-year period did not begin to run until the expiration of the 90-day period in which he could have petitioned for a writ of certiorari from the U.S. Supreme Court. The Nebraska Supreme Court rejected this argument. It held:

> [i]n view of the Nebraska practice rules, jurisprudence, and the language of § 29-3001(4)(a), we conclude that the issuance of a mandate by a Nebraska appellate court is a definitive determination of the "conclusion of a direct appeal," and the "date the judgment of conviction became final," for purposes of § 29-3001(4)(a).

*State v. Huggins*, 291 Neb. at 450, 866 N.W.2d at 85.

Washington attempts to distinguish this case from *Huggins* on the basis that, unlike the defendant in *Huggins*, he did actually petition the U.S. Supreme Court for a writ of certiorari. We find this argument unpersuasive. The holding in *Huggins* plainly states that the issuance of a mandate by a Nebraska appellate court is a clear signal that a direct appeal has been concluded. This is true regardless of a party's decision to seek further review.

Moreover, the Nebraska Supreme Court recognized that parties seeking a writ of certiorari needed a way to do so while also preserving their opportunity to seek postconviction relief at a later date. Thus, in *Huggins*, the Nebraska Supreme Court provided the following roadmap:

> If a criminal defendant intends to seek a writ of certiorari from the U.S. Supreme Court, he or she should request a stay of the Nebraska court's mandate. Neb. Ct. R. App. P. § 2-114(2) provides: "Parties desiring to prosecute proceedings to the United States Supreme Court, and desiring an order staying the mandate, must make application within 7 days from the date of the filing of the opinion or other dispositive entry." It is generally not necessary to wait 90 days to see whether the defendant will petition for a writ of certiorari, because the defendant should have signaled his or her intent to petition for certiorari by requesting a stay of the mandate pursuant to Neb. Ct. R. App. P. § 2-114(2). Therefore, as a general matter, when a Nebraska appellate court issues a mandate in a direct appeal, it indicates that certiorari is not being sought and that the direct appeal has been concluded. Thus, a mandate is not immediately issued by Nebraska appellate courts after an appeal is decided, and if a defendant intends to seek a writ of certiorari, the defendant may seek to stay issuance of the mandate.

*State v. Huggins*, 291 Neb. 443, 449-50, 866 N.W.2d 80, 85 (2015).

Washington did not follow the prescribed procedure. He did not signal his intent to petition for certiorari by requesting a stay of the Supreme Court's mandate. His failure to do so directly resulted in the Supreme Court's issuance of its mandate, and consequently, the conclusion of his direct appeal.

Washington raises one additional argument in support of his position. He notes that in September 2023, § 29-3001(4)(e) was amended to address the exact situation now before us. Section 29-3001(4)(e) (Cum. Supp. 2024) has been amended to state that the 1-year limitation period for postconviction relief motions shall run from:

> [t]he date on which the Supreme Court of the United States denies a writ of certiorari or affirms a conviction appealed from the Nebraska Supreme Court. This subdivision only applies if, within thirty days after petitioning the Supreme Court of the United States for a writ of certiorari, the prisoner files a notice in the district court of conviction stating that the prisoner has filed such petition.

- 4 -

In the new version of the statute, § 29-3001(4)(a) remains the same.

Of course, this new triggering event did not exist when Washington filed his motion for postconviction relief. Nonetheless, Washington argues that this amendment demonstrates the Legislature's original intent to include petitions for certiorari in the phrase "direct appeal." We disagree.

Washington's claim that the 2023 amendment reflects the Legislature's original intent for the statute is speculative at best. He has not cited any legislative history or other relevant materials that would support his position. Additionally, the amendment revises § 29-3001(4)(e), not § 29-3001(4)(a). If the Legislature wanted to revise § 29-3001(4)(a) or redefine the phrase "direct appeal," it could have done so. Instead, § 29-3001(4)(a) reads today exactly as it did when Washington first filed his motion for postconviction relief. What did occur was the substitution of the new language for the phrase "August 27, 2011."

Furthermore, Washington does not argue that this new triggering event retroactively applies in this case. And if the amendment does not retroactively apply (which we assume without deciding, as we have not been asked to consider this issue), then the Supreme Court precedent iterated above is controlling. If Washington wanted to extend the available time period for filing a postconviction petition while his petition for a writ of certiorari was pending, he should have followed the roadmap prescribed by the Supreme Court and our rules of appellate procedure. He should have requested a stay of the mandate.

We conclude that for purposes of § 29-3001(4)(a), Washington's direct appeal concluded on December 21, 2018, the day the Supreme Court issued its mandate. Washington filed his postconviction motion on October 6, 2020. Having failed to file his postconviction motion within 1 year of the conclusion of his direct appeal, Washington's motion was time barred under § 29-3001(4)(a).

We acknowledge that our reasoning differs from that of the district court. However, we agree with the court's ultimate decision to deny Washington's motion for postconviction relief. Where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that relied on by the trial court, an appellate court will affirm. *State v. Brown*, 312 Neb. 654, 980 N.W.2d 834 (2022).

## CONCLUSION

Washington's motion for postconviction relief was untimely filed pursuant to § 29-3001(4)(a). Therefore, although our reasoning differs from that of the district court, we affirm the court's order dismissing Washington's motion without an evidentiary hearing.

AFFIRMED.